# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CARMIGNAC GESTION, S.A., | ) | ECF Case |
| | ) | Document Electronically Filed |
| Plaintiff, | ) | |
| | ) | **(ORAL ARGUMENT REQUESTED)** |
| v. | ) | |
| | ) | **Motions Day: <u>March 4, 2019</u>** |
| PERRIGO COMPANY PLC, JOSEPH C. PAPA, AND JUDY L. BROWN, | ) | **Civil Action No. 2:17-CV-10467-MCA-LDW** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| FIRST MANHATTAN CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Action No. 2:18-CV-02291-MCA-LDW** |
| | ) | |
| PERRIGO COMPANY PLC, JOSEPH C. PAPA, AND JUDY L. BROWN, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| MANNING & NAPIER ADVISORS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Civil Action No. 2:18-CV-00674-MCA-LDW** |
| v. | ) | |
| | ) | |
| PERRIGO COMPANY PLC, JOSEPH C. PAPA, AND JUDY L. BROWN, | ) | |
| | ) | |
| Defendants. | ) | |

[Caption Continued on the Following Page]

|  |  |
|---|---|
| NATIONWIDE MUTUAL FUNDS, on behalf of its series NATIONWIDE GENEVA MID CAP GROWTH FUND and NATIONWIDE S&P 500 INDEX FUND, <br><br> and <br><br> NATIONWIDE VARIABLE INSURANCE TRUST, on behalf of its series NVIT DNYAMIC U.S. GROWTH FUND, NVIT MULTI-MANAGER LARGE CAP VALUE FUND, NVIT S&P 500 INDEX FUND, and TEMPELTON NVIT INTERNATIONAL VALUE FUND. <br><br> Plaintiffs, <br><br> v. <br><br> PERRIGO COMPANY PLC, JOSEPH C. PAPA, AND JUDY L. BROWN, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) **Civil Action No. 2:18-CV-15382-MCA-LDW** |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTIONS TO DISMISS CERTAIN CLAIMS FROM PLAINTIFFS' COMPLAINTS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

TABLE OF ABBREVIATIONS .......................................................................... vii

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND ................................................................................................. 3

ARGUMENT ....................................................................................................... 7

I. PLAINTIFFS HAVE FAILED TO SATISFY THE PLEADING REQUIREMENTS FOR A SECTION 18 CLAIM ......................................................................... 8

    A. Most of the Challenged Statements Were Not "Filed" with the SEC Pursuant to the Exchange Act ................................................................. 9

    B. Plaintiffs Fail to Adequately Plead Actual Reliance ................................ 10

II. PLAINTIFFS FAIL TO ADEQUATELY PLEAD SECTION 10(b), 14(e), OR 20(a) CLAIMS BASED ON THEIR THEORY THAT DEFENDANTS FAILED TO DISCLOSE INCREASED COMPETITION ............................................. 13

    A. Defendants' Public Statements Are Inactionable ..................................... 13

        1. Plaintiffs' Own Pleadings and Perrigo's SEC Filings Show that Perrigo Did Not Conceal Any Risks from Increased Competition ............ 13

        2. Plaintiffs' Theory that Defendants Concealed Increased Competition Contradicts the Theory Adopted from *Roofer's* that Defendants Concealed Decreased Competition ......................................... 15

        3. Plaintiffs Fail to Plead any False or Misleading Statement or Omission in Connection with Ms. Brown's October 22, 2015 Statement .................. 16

        4. Forward-Looking Statements Are Protected by the PSLRA's Safe Harbors ................................................................................. 17

            a. The Challenged Statements Are Protected by the First Safe Harbor .............................................................................. 18

            b. The Challenged Statements Are Protected by the Second Safe Harbor .............................................................................. 19

    B. Defendants' Alleged Statements to First Manhattan Are Inactionable .......... 20

1.  Mr. Papa's Alleged Statements During his April 22, 2015 Conference Call with First Manhattan Are Inactionable ..........................20

2.  Ms. Brown's Alleged Statements During her September 30, 2015 Meeting with First Manhattan Are Inactionable ........................21

C.  Plaintiffs Fail to Adequately Plead Scienter ........................................... 22

1.  The Complaints Fail to Plead Particularized Facts Giving Rise to a Strong Inference that Defendants Were Motivated to Defraud Investors ..........................................................................................22

2.  The Complaints Fail to Plead Particularized Facts Giving Rise to a Strong Inference of Conscious Misbehavior or Recklessness ...............24

a.  The Confidential Witnesses Do Not Contribute to a Strong Inference of Scienter ........................................................24

b.  The Supposed "Additional Allegations of Scienter" Do Not Contribute to a Strong Inference of Scienter ......................28

c.  Collectively, the Allegations Do Not Raise a Strong Inference of Scienter ........................................................29

CONCLUSION...................................................................................................30

TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                  <u>**Page(s)**</u>

*In re Adolor Sec. Litig.*,
  616 F. Supp. 2d 551 (E.D. Pa. 2009) ...................................................22

*In re Aetna Sec. Litig.*,
  617 F.3d 272 (3d Cir. 2010)................................................................17, 21

*Alaska Elec. Pension Fund v. Adecco S.A.*,
  434 F. Supp. 2d 815 (S.D. Cal. 2006), *aff'd*, 256 F. App'x 74 (9th Cir. 2007) ......................26

*In re Alstom SA Sec. Litig.*,
  406 F. Supp. 2d 433 (S.D.N.Y. 2005)..................................................9

*Armstrong v. Am. Pallet Leasing Inc.*,
  678 F. Supp. 2d 827 (N.D. Iowa 2009)................................................9, 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................7

*In re Bio-Tech. Gen. Corp. Sec. Litig.*,
  380 F. Supp. 2d 574 (D.N.J. 2005), *aff'd sub nom.*, *In re Savient Pharm. Inc.
  Sec. Litig.*, 283 F. App'x 887 (3d Cir. 2008) ....................................26, 27

*In re Bristol-Myers Squibb Sec. Litig.*,
  312 F. Supp. 2d 549 (S.D.N.Y. 2004)..................................................23

*Carpenters Tr. Fund of St. Louis v. Barclays PLC*,
  750 F.3d 227 (2d Cir. 2014)..............................................................21

*City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*,
  686 F. Supp. 2d 404 (D. Del. 2009).....................................................27

*Cyber Media Grp., Inc. v. Is. Mortg. Network, Inc.*,
  183 F. Supp. 2d 559 (E.D.N.Y. 2002) ................................................10

*Dempsey v. Vieau*,
  130 F. Supp. 3d 809 (S.D.N.Y. 2015)..................................................24

*Fabricatore v. ADT LLC*,
  2018 WL 3696581 (D.N.J. Aug. 3, 2018) ...........................................15

*In re Fusion-io, Inc. Sec. Litig.*,
  2015 WL 661869 (N.D. Cal. Feb. 12, 2015) .......................................28

*Gannon v. Continental Ins. Co.*,
  920 F. Supp. 566 (D.N.J. 1996) ..........................................................11

*In re Hertz Global Holdings Inc.*,
　905 F.3d 106 (3d Cir. 2018).............................................................22

*In re Hertz Global Holdings, Inc. Sec. Litig.*,
　2017 WL 1536223 (D.N.J. Apr. 27, 2017), *aff'd*, 905 F.3d 106 (3d Cir. 2018)...............18, 24

*Int'l Fund Mgmt. S.A. v. Citigroup Inc.*,
　822 F. Supp. 2d 368 (S.D.N.Y. 2011)..................................................12

*Janus Capital Grp., Inc. v. First Derivative Traders*,
　564 U.S. 135 (2011)......................................................................11

*Karacand v. Edwards*,
　53 F. Supp. 2d 1236 (D. Utah 1999)....................................................19

*Kelley v. Rambus, Inc.*,
　2008 WL 5170598 (N.D. Cal. Dec. 9, 2008), *aff'd*, 384 F. App'x 570 (9th Cir. 2010)........................................................................................12

*Key Equity Inv'rs, Inc. v. Sel-Leb Mktg. Inc.*,
　2005 WL 3263865 (D.N.J. Nov. 30, 2005), *aff'd*, 246 F. App'x 780 (3d Cir. 2007)........................................................................................20

*In re Livent, Inc. Noteholders Sec. Litig.*,
　151 F. Supp. 2d 371 (S.D.N.Y. 2001)..................................................15

*LLDVF, L.P. v. DiNicola*,
　2010 WL 3210613 (D.N.J. Aug. 12, 2010) ......................................8, 9, 12

*Martin v. GNC Holdings, Inc.*,
　2017 WL 3974002 (W.D. Pa. Sept. 8, 2017)...........................................29

*In re NAHC, Inc. Sec. Litig.*,
　306 F.3d 1314 (3d Cir. 2002)............................................................3

*Nat'l Junior Baseball League v. PharmaNet Dev. Grp. Inc.*,
　720 F. Supp. 2d 517 (D.N.J. 2010) (Wolfson, J.)......................................27

*In re NovaGold Res. Inc. Sec. Litig.*,
　629 F. Supp. 2d 272 (S.D.N.Y. 2009)..................................................23

*Rahman v. Kid Brands, Inc.*,
　736 F.3d 237 (3d Cir. 2013).............................................................29

*Roofer's Pension Fund, et al. v. Papa, et al.*,
　2018 WL 3601229 (D.N.J. Jul. 27, 2018).........................................*passim*

*Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.,*
    2015 WL 3833849 (M.D. Pa. June 22, 2015)................................................19

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.,*
    33 F. Supp. 3d 401 (S.D.N.Y. 2014)......................................................12

*SRM Global Fund Ltd. P'Ship v. Countrywide Fin. Corp.,*
    2010 WL 2473595 (S.D.N.Y. June 17, 2010), *aff'd*, 448 F. App'x 116 (2d Cir.
    2011) ...............................................................................15

*In re Splash Tech. Holdings, Inc. Sec. Litig.,*
    2000 WL 1727377 (N.D. Cal. Sept. 29, 2000) .......................................19

*In re Suprema Specialties, Inc. Sec. Litig.,*
    438 F.3d 256 (3d Cir. 2006)..........................................................8, 12

*In re Synchronoss Sec. Litig.,*
    705 F. Supp. 2d 367 (D.N.J. 2010) ............................................18, 20, 24

*Tellabs, Inc. v. Makor Issues & Rights, Ltd,*
    551 U.S. 308 (2007)..................................................................3, 22

*In re Tibco Software, Inc. Sec. Litig.,*
    2006 WL 2844421 (N.D. Cal. Sept. 29, 2006) ........................................25

*Wilson v. Bernstock,*
    195 F. Supp. 2d 619 (D.N.J. 2002) ...................................................23

*Witriol v. Conexant Sys., Inc.,*
    2006 WL 3511155 (D.N.J. Dec. 4, 2006) ...........................................12, 13

*Zucco Partners, LLC v. Digimarc Corp.,*
    445 F. Supp. 2d 1201 (D. Or. 2006), *aff'd*, 552 F.3d 981 (9th Cir. 2009)...............28

## **Statutes and Rules**

Fed. R. Civ. P. 9(b) ...................................................................8

Fed. R. Civ. P. 12(b)(6)................................................................22

Securities Exchange Act of 1934, § 10, 15 U.S.C. § 78j....................................*passim*

Securities Exchange Act of 1934, § 14, 15 U.S.C. § 78n................................7, 13

Securities Exchange Act of 1934, § 18, 15 U.S.C. § 78r *et seq*............................*passim*

Securities Exchange Act of 1934, § 20, 15 U.S.C. § 78t................................7, 13

Securities Exchange Act of 1934, § 21D, 15 U.S.C. § 78u-4 *et seq*.....................*passim*

Securities Exchange Act of 1934, § 21E, 15 U.S.C. § 78u-5 *et seq* ..................................... *passim*

SEC Rule 10b-5, 17 CFR 240.10b-5 ...................................................................................7, 13

TABLE OF ABBREVIATIONS

| ABBREVIATION | DESCRIPTION | EXHIBIT[*] |
|---|---|---|
| **Complaints in Individual Actions** | | |
| *Carmignac* Complaint | Complaint in *Carmignac Gestion, S.A. v. Perrigo Company plc, et al.*, No. 2:17-cv-10467-MCA-LDW | 1 |
| *First Manhattan* Complaint | Amended Complaint in *First Manhattan Co. v. Perrigo Company plc, et al.*, No. 2:18-cv-02291-MCA-LDW | 2 |
| *Manning* Complaint | Complaint in *Manning & Napier Advisors, LLC v. Perrigo Company plc, et al.*, No. 2:18-cv-00674-MCA-LDW | 3 |
| *Nationwide* Complaint | Complaint in *Nationwide Mutual Funds, et al. v. Perrigo Company plc, et al.*, No. 2:18-cv-15382-MCA-LDW | 4 |
| **SEC Filings of Perrigo Company plc** | | |
| 4/9/15 8-K | Perrigo Company plc Current Report, filed with the SEC on Form 8-K on April 9, 2015 | 5 |
| 4/24/15 8-K | Perrigo Company plc Current Report, filed with the SEC on Form 8-K on April 24, 2015 | 6 |
| 8/13/15 10-K | Perrigo Company plc Annual Report for the year ending June 27, 2015, filed with the SEC on Form 10-K on August 13, 2015 | 7 |
| 9/14/15 8-K | Perrigo Company plc Current Report, filed with the SEC on Form 8-K on September 14, 2015 | 8 |
| 11/13/15 8-K | Perrigo Company plc Current Report, filed with the SEC on Form 8-K on November 13, 2015 | 9 |
| 2/25/16 10-KT | Perrigo Company plc Annual Report for the year ending December 31, 2015, filed with the SEC on Form 10-KT on February 25, 2016 | 10 |

---

[*] The documents listed herein are attached to the accompanying Declaration of Samuel P. Groner, dated November 20, 2018.

| ABBREVIATION | DESCRIPTION | EXHIBIT[*] |
|---|---|---|
| 5/16/16 8-K | Perrigo Company plc Current Report, filed with the SEC on Form 8-K on May 16, 2016 | 11 |
| 5/22/17 10-K | Perrigo Company plc Annual Report for the year ending December 31, 2016, filed with the SEC on Form 10-K on May 22, 2017 | 12 |
| **Transcripts** | | |
| 6/2/15 Conf. Tr. | Transcript of Jefferies Global Healthcare Conference, dated June 2, 2015 | 13 |
| 10/22/15 Conf. Call Tr. | Transcript of the Perrigo Company plc Third Quarter 2015 Earnings Conference Call, dated October 22, 2015 | 14 |
| 1/5/16 Conf. Tr. | Transcript of the Goldman Sachs Healthcare CEOs Unscripted Conference, dated January 5, 2016 | 15 |
| **Other** | | |
| 11/9/16 Mylan 10-Q | Mylan N.V. Quarterly Report for the quarter ending September 30, 2016, filed with the SEC on Form 10-Q on November 9, 2016 | 16 |
| 12/21/16 Aceto 8-K | Aceto Corporation Current Report, filed with the SEC on Form 8-K on December 21, 2016 | 17 |
| 10/19/15 Time Magazine article | Sam Frizell, Hillary Clinton and Bernie Sanders Find Common Enemy in Drug Exec, Time Magazine, October 19, 2015 | 18 |

PRELIMINARY STATEMENT

The above-captioned actions (the "Individual Actions"), brought by individual shareholders of Perrigo Company plc ("Perrigo" or "the Company"), involve claims, allegations, and parties that significantly overlap with the claims, allegations, and parties in the putative class action captioned *Roofer's Pension Fund, et al. v. Papa, et al.*, No. 2:16-cv-02805-MCA-LDW (D.N.J.) (the "Class Action" or "*Roofer's*"). These shareholders have opted out of the putative Class Action, in which the Court granted in part and denied in part the defendants' motions to dismiss. The parties in the Individual Actions have stipulated that the Court's ruling on the motions to dismiss in *Roofer's* should apply to the extent the claims and allegations in the Individual Actions and *Roofer's* overlap, and Defendants Perrigo, Joseph C. Papa, and Judy L. Brown hereby move for dismissal of claims not asserted in *Roofer's* or premised on allegations not made in *Roofer's*.[1]

**New Claim:** Both First Manhattan Co. ("First Manhattan") and Manning & Napier Advisors, LLC ("Manning") assert claims under Section 18 of the Securities Exchange Act of 1934 (the "Exchange Act"), but neither complaint satisfies the pleading requirements of a Section 18 claim.[2] To adequately plead a Section 18 claim, a plaintiff must allege facts showing (1) that an allegedly false or misleading statement appeared in a document or report filed with the SEC pursuant to the Exchange Act and (2) the plaintiffs' actual reliance on those particular statements. Here, the challenged statements are inactionable under Section 18 because (1) most of them were not contained in documents or reports filed with the SEC pursuant to the Exchange Act and (2) First Manhattan and Manning allege a general reliance on everything that Defendants

---

[1]    The specific relief sought by Defendants is discussed in further detail in the subsection entitled *The Relief Sought in these Motions*. *See infra* at 6-7.

[2]    Carmignac Gestion, S.A.'s ("Carmignac") Section 18 claim has been voluntarily dismissed. *Carmignac* ECF No. 30. Nationwide Mutual Funds and Nationwide Variable Insurance Trust (collectively, "Nationwide") did not assert a Section 18 claim.

publicly disclosed during a two-year period, but such a broad catch-all pleading strategy does not satisfy Section 18's strict requirements.

**New Theory:** In *Roofer's*, the plaintiffs alleged that Defendants knew about, but failed to disclose, decreased competition in the market due to alleged price fixing. The plaintiffs in *First Manhattan*, *Manning*, and *Nationwide* repeat those allegations but, together with the plaintiffs in *Carmignac* (collectively, "Plaintiffs"), also advance an entirely contradictory theory, namely, that Defendants supposedly failed to disclose *increased* competition resulting from the U.S. Food and Drug Administration ("FDA") accelerating its approval of generic prescription drugs.

Plaintiffs cannot have it both ways. Their own pleadings concede that Perrigo's public filings disclosed that Perrigo would face increased price competition as other generic prescription drug companies produced the same product or introduced new drugs. Plaintiffs' new competition allegations thus fail to plead an actionable misrepresentation or omission and fall far short of the rigorous requirements for pleading scienter under the Private Securities Litigation Reform Act of 1995 ("PSLRA").

These motions raise the following issues:

- Whether First Manhattan and Manning's allegations concerning alleged price-fixing of generic drugs state a claim under Section 18; and

- Whether the portions of the *First Manhattan*, *Manning*, *Carmignac*, and *Nationwide* complaints that assert a new theory – namely, that Defendants misrepresented the risk that increased competition posed to Perrigo's generic prescription drug pricing – adequately plead violations of Section 10(b), 14(e), or 20(a) of the Exchange Act.

BACKGROUND[3]

Defendants will not repeat the underlying factual allegations that were addressed by the

Court in its July 27, 2018 Opinion in *Roofer's Pension Fund, et al. v. Papa*, 2018 WL 3601229

(D.N.J. Jul. 27, 2018) (Arleo, J.).  Rather, Defendants note only those allegations pertinent to

their limited motions seeking dismissal of claims not asserted, or premised on allegations not

made, in *Roofer's*.

**Plaintiffs**.  Plaintiffs are sophisticated investors who cumulatively made thousands of

purchases of Perrigo securities between April 2015 and April 2017.  *First Manhattan* ECF No. 9-

1 at Appendix A; *Manning* ECF No. 4; *Carmignac* ECF No. 1 at Appendix A; *Nationwide* ECF

No. 1.  First Manhattan is an SEC-registered investment advisor and/or broker dealer managing

more than $16 billion in assets.  *First Manhattan* Am. Compl. ("FMC") ¶ 46.  Manning is a

portfolio management company holding approximately $25.6 billion in assets.  *Manning* Compl.

("MNC") ¶ 46.  Carmignac is a French public limited company that serves as the management

company for French mutual funds.  *Carmignac* Compl. ("CGC") ¶ 39.  Nationwide Mutual

Funds and Nationwide Variable Insurance Trust are investment companies.  *Nationwide* Compl.

("NWC") ¶¶ 49, 60.

**The Defendants**.  Perrigo is the world's largest manufacturer of over-the-counter

healthcare products and supplier of infant formulas for the store brand market.  5/22/17 10-K at

3.  During the relevant time period, Perrigo manufactured generic versions of brand-name drugs

through its Consumer Healthcare (for non-prescription drugs) and Prescription Pharmaceuticals

("Rx") (for prescription drugs) segments.  8/13/15 10-K at 28.  Mr. Papa served as Perrigo's

---

[3]     This Background is drawn from documents that may be considered on these motions,
including: (i) the Complaints (as defined below) and documents cited therein, (ii) Perrigo's SEC
filings, and (iii) published, historical information of which the Court may take judicial notice.
*See Tellabs, Inc. v. Makor Issues & Rights, Ltd*, 551 U.S. 308, 322-23 (2007); *In re NAHC, Inc.
Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002).

President and CEO from 2006 until April 24, 2016 and Ms. Brown was Perrigo's CFO from

2006 until February 27, 2017.  CGC ¶¶ 45-46; FMC ¶¶ 50-51; MNC ¶¶ 50-51; NWC ¶¶ 75-76.

     *Mylan's Failed Hostile Tender Offer*.  In April 2015, Perrigo received an unsolicited,

indicative proposal from Mylan, N.V. ("Mylan") to purchase Perrigo for a combination of cash

and Mylan stock.  4/9/15 8-K at Ex. 99.1.  Perrigo's board of directors (the "Board") rejected the

proposal because, in its view, Mylan "significantly undervalued the Company and its future

growth prospects" and the potential acquisition "was not in the best interests of Perrigo's

shareholders."  4/24/15 8-K, Ex. 99.1.

     Following the Board's rejection of Mylan's proposal, Mylan announced its intention to

launch a hostile tender offer, which Mylan formally launched in September 2015.  4/24/15 8-K,

Ex. 99.1; 9/14/15 8-K, Ex. 99.1, Ex. 99.2.  Throughout the tender process, Perrigo's Board and

management recommended rejection of the proposal.  On November 13, 2015, less than 50% of

the holders of Perrigo's shares tendered, and the tender offer failed.  11/13/15 8-K, Ex. 99.1.

     Plaintiffs contend that, "[t]o convince Perrigo's shareholders to reject Mylan's tender

offer, Defendants made numerous misrepresentations touting Perrigo's standalone value and

growth prospects," including allegedly falsely claiming that "Perrigo had the ability to withstand

pricing pressures in the generic drug industry."  CGC ¶ 2; FMC ¶ 3; MNC ¶ 3; NWC ¶ 3.

According to Plaintiffs, Defendants' statements related to pricing of generic prescription drugs,

including during an April 2015 conference call between First Manhattan representatives and Mr.

Papa and a September 2015 meeting between First Manhattan representatives and Ms. Brown,

were misleading because those statements failed to account for the fact that, beginning in the

Spring of 2015, the FDA "was fast-tracking the review and approval process for [ANDAs],"

thereby allegedly increasing competition and affecting pricing in the generic prescription drug

industry.  FMC ¶¶ 26, 37, 123, 137, 335, 339-40, 349-50.[4]  This allegation was not at issue in *Roofer's*.

***Antitrust Investigation***.  On May 2, 2017, search warrants were executed at Perrigo facilities and other locations in connection with a United States Department of Justice ("DOJ") Antitrust Division investigation relating to drug pricing in the generics pharmaceutical industry.  5/22/17 10-K at 44-45.  The DOJ has been investigating pricing and sales within the U.S.-based generic pharmaceutical manufacturing industry since at least 2014 and has used the raid tactic at several pharmaceutical companies.  *E.g.*, 11/9/16 Mylan 10-Q at 58; 12/21/16 Aceto 8-K, Ex. 99.5 at 16.  No civil or criminal charges have been brought against Perrigo or any of its employees by any government agency in connection with any antitrust investigations.  Nor has the DOJ accused Perrigo of wrongdoing.

***The Class Action***.  On June 21, 2017, the lead plaintiffs in *Roofer's* filed an amended complaint (the "Class Action Complaint") against Perrigo, Mr. Papa, Ms. Brown, and nine other individuals alleging they made material misstatements or omissions about "four key areas": (i) the integration of Omega Pharma NV ("Omega"); (ii) Perrigo's accounting for a royalty stream for the drug Tysabri®; (iii) Perrigo's organic growth; and (iv) allegedly "collusive" pricing of six generic prescription drugs.  The defendants timely moved to dismiss the Class Action Complaint.

On July 27, 2018, the Court dismissed without prejudice (i) the Tysabri® and organic growth claims against all defendants, and (ii) all claims against the individual defendants except Mr. Papa and Ms. Brown.  *See Roofer's*, 2018 WL 3601229, at *20, 22.  The allegations

---

[4]     Seeking approval from the FDA for generic versions of brand-name drugs typically involves "filing a New Drug Application ('NDA'), which is often followed by filing an Abbreviated New Drug Application ('ANDA')."  8/13/15 10-K at 4.

concerning the Omega integration and the alleged price-fixing of six generic prescription drugs were not dismissed. *See id.* at 22, 23.

*The Complaints in these Actions*. On November 1, 2017, Carmignac filed a complaint against Perrigo, Mr. Papa, Ms. Brown, and Marc Coucke. Three similar complaints were subsequently filed: by Manning, First Manhattan, and Nationwide (collectively, together with the *Carmignac* complaint, the "Complaints"). Following the dismissal of Mr. Coucke from *Roofer's*, the parties agreed to dismiss him from the Individual Actions in which he had been named. *Carmignac* ECF No. 18; *First Manhattan* ECF No. 16; *Manning* ECF No. 17.

*The Stipulations and Orders*. The parties have entered into a number of agreements to obviate the need to re-brief issues already resolved in *Roofer's*. In particular, the parties stipulated to "seek entry of an order replicating any issues resolved" by the July 27, 2018 decision in *Roofer's* and that "[t]he issues and arguments raised in the briefing in connection with the Motions to Dismiss in [*Roofer's*] shall not be re-briefed in his action but rather, for purposes of judicial efficiency, shall be treated as if such issues and arguments had been raised in motion(s) to dismiss in this action and had been resolved in a similar fashion to the way those issues and arguments were resolved in the July 27, 2018 Decision." *Carmignac* ECF No. 30; *First Manhattan* ECF No. 20; *Manning* ECF No. 29; *Nationwide* ECF No. 6.

First Manhattan and Manning also agreed to voluntarily dismiss their respective Section 18 claims "except insofar as the Section 18 claim is premised on allegations concerning alleged price-fixing of generic drugs." *First Manhattan* ECF No. 20; *Manning* ECF No. 29. Because Carmignac made no allegations concerning alleged price-fixing of generic drugs, it agreed to voluntarily dismiss its entire Section 18 claim. *Carmignac* ECF No. 30.

*The Relief Sought in these Motions*. Defendants seek the following relief:

**First Manhattan:**  Dismissal of Count I (Section 14(e) of the Exchange Act), Count II (Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder), and Count IV (Section 20(a) of the Exchange Act) to the extent that those claims are premised on the new allegations not at issue in *Roofer's*.  Defendants also seek dismissal of Count III (Section 18 of the Exchange Act) to the extent that it has not already been voluntarily dismissed.

**Manning:**  Dismissal of Count I (Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder), and Count III (Section 20(a) of the Exchange Act) to the extent that those claims are premised on the new allegations not at issue in *Roofer's*.  Defendants also seek dismissal of Count II (Section 18 of the Exchange Act) to the extent that it has not already been voluntarily dismissed.

**Carmignac**: Dismissal of Count I (Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder), Count III (Section 14(e) of the Exchange Act), and Count IV (Section 20(a) of the Exchange Act) to the extent that those claims are premised on any of the alleged statements or omissions set forth in Section VI.B of the *Carmignac* complaint.  Count II (Section 18 of the Exchange Act) was previously voluntarily dismissed.

**Nationwide:**  Dismissal of Count I (Section 14(e) of the Exchange Act), Count II (Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder), and Count III (Section 20(a) of the Exchange Act) to the extent that those claims are premised on the new allegations not at issue in *Roofer's*.

### ARGUMENT

A plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007).[5]  Rather, a complaint must "provide[] a sufficient factual basis such that it states a facially plausible claim for relief."  *Roofer's*, 2018 WL 3601229, at *6; *see also Twombly*, 550 U.S. at 555 (allegations "must be enough to raise a right to relief above the speculative level").

Rule 9(b) and the PSLRA impose additional, heightened pleading requirements.  Where, as here, complaints sound in fraud, Rule 9(b) requires that the plaintiff "must state with particularity the circumstances constituting fraud."  *Roofer's*, 2018 WL 3601229, at *6.  Likewise, the PSLRA mandates that "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  *LLDVF, L.P. v. DiNicola*, 2010 WL 3210613, at *10 (D.N.J. Aug. 12, 2010) (Linares, J.) (quoting 15 U.S.C. § 78u-4(b)(1)).

## I.     PLAINTIFFS HAVE FAILED TO SATISFY THE PLEADING REQUIREMENTS FOR A SECTION 18 CLAIM

Count III of the *First Manhattan* complaint and Count II of the *Manning* complaint assert a claim under Section 18 of the Exchange Act.  Each plaintiff voluntarily dismissed that claim "except insofar as [it] is premised on allegations concerning alleged price-fixing of generic drugs."  *First Manhattan* ECF No. 20; *Manning* ECF No. 29.

Section 18 "creates a private remedy for damages resulting from the purchase or sale of a security in reliance upon a false or misleading statement contained in any document or report filed with the SEC pursuant to the Exchange Act."  *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 283 (3d Cir. 2006).  To state a Section 18 claim, a plaintiff must specifically plead "actual, as opposed to presumed, reliance" on an allegedly false or misleading statement in a document or report filed with the SEC pursuant to the Exchange Act.  *Id.; see also LLDVF*, 2010

---

[5]     Unless otherwise noted, emphasis is added and citations are omitted throughout.

WL 3210613, at *3, 11 (among the elements of a Section 18 claim is the requirement that "the statement was contained in a document 'filed' pursuant to the Exchange Act or any rule or regulation thereunder" and "actual reliance on specific statements contained in the SEC filings at issue."); *Armstrong v. Am. Pallet Leasing Inc.*, 678 F. Supp. 2d 827, 869 (N.D. Iowa 2009) ("in asserting a § 18 claim, a plaintiff must specifically allege actually reading a copy of the document filed with the SEC and relying on misrepresentations contained in it when buying or selling a security"). This latter requirement "has sometimes been referred to as 'eyeball[]' reliance." *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 479 (S.D.N.Y. 2005).

Here, the challenged statements in connection with the price-fixing allegations are inactionable under Section 18 because (i) they were not contained in documents or reports filed with the SEC pursuant to the Exchange Act, and/or (ii) First Manhattan and Manning have failed to adequately plead reliance.

### A.   Most of the Challenged Statements Were Not "Filed" with the SEC Pursuant to the Exchange Act

The vast majority of challenged statements in the *First Manhattan* and *Manning* complaints were either made orally (during conference calls with analysts, industry conferences, or alleged discussions with First Manhattan investment professionals) or were contained in Company press releases or presentation slides that were not "filed" with the SEC pursuant to the Exchange Act. FMC ¶¶ 336-46, 349-58, 361-64, 368-69; MNC ¶¶ 320-28, 331-38, 341-44, 348-49; *see also* 5/16/16 8-K at Item 2.02 ("The information in this Current Report on Form 8-K/A is being furnished and shall not be deemed 'filed' for purposes of Section 18 of the Exchange Act of 1934."). First Manhattan and Manning do not allege that those statements give rise to Section 18 claims, nor could they. *See Alstom*, 406 F. Supp. 2d at 480-82 (dismissing Section 18 claim premised on statements in documents "furnished" to the SEC but not filed with the SEC pursuant

to the Exchange Act, such as press releases and annual reports); *Cyber Media Grp., Inc. v. Is. Mortg. Network, Inc.*, 183 F. Supp. 2d 559, 577-78 (E.D.N.Y. 2002) (dismissing Section 18(a) claim premised on oral statements and statements in documents not filed with the SEC pursuant to the Exchange Act).

Rather, First Manhattan and Manning assert their respective Section 18 claims based only on statements in Perrigo's "Forms 10-K with the SEC," which Perrigo "file[d] . . . pursuant to Sections 13(a) and 15(d) [of] the Exchange Act and the rules and regulations promulgated thereunder." FMC ¶¶ 461-62; MNC ¶¶ 435-36. As discussed below, First Manhattan and Manning fail to adequately plead that they actually relied on those statements (or on any other statements in documents filed with the SEC pursuant to the Exchange Act, such as 10-Qs).

### B. Plaintiffs Fail to Adequately Plead Actual Reliance

First Manhattan and Manning allege that Perrigo's August 13, 2015 Form 10-K contained four misstatements that have not been voluntarily dismissed, *i.e.*, that Perrigo falsely:

- stated that its generic prescription drug division "'operate[d] in a highly competitive environment'";

- stated that its generic prescription drug division "'face[d] vigorous competition from other pharmaceutical companies that may threaten the commercial acceptance and pricing of our products'";

- stated that "'[t]he market for Rx pharmaceuticals is subject to intense competition from other generic drug manufacturers'"; and

- "listed Actavis (a/k/a Allergan), Glenmark, Mylan, Sandoz and Taro as among its 'generic drug manufacturer competitors.'"

FMC ¶ 347; MNC ¶ 329.[6] Likewise, First Manhattan and Manning allege that Perrigo falsely stated in its May 16, 2016, August 10, 2016, and November 10, 2016 10-Qs that it "had

---

[6]    First Manhattan and Manning make similar allegations in connection with the identical statements in Perrigo's 2/25/16 10-KT. *See* FMC ¶ 359; MNC ¶ 339.

10

experienced 'a recent reduction in pricing expectations in our U.S. businesses from historical patterns, in particular in our Rx segment due to industry and competitive pressures in the sector,' which it attributed in part to 'competition in specific product categories.'" FMC ¶¶ 365-66; MNC ¶¶ 345-46.[7]

Despite these allegations, First Manhattan and Manning do not plead facts showing that (or how) they actually relied on any of these statements. Instead, they claim they "undertook rigorous, security-specific research in reaching investment decisions concerning Perrigo common stock" and make the conclusory assertion that "[a]s part of [their] investment analysis," they "directly relied on information publicly disclosed by Defendants in public filings with the SEC and public statements to investors during the Relevant Period [of April 21, 2015 to May 3, 2017], including the materially false or misleading statements and omissions alleged . . . above." FMC ¶¶ 437-38; *see also id.* ¶ 463 (similar); MNC ¶¶ 418-19, 437 (similar).

These generalized and conclusory allegations of reliance on everything that Defendants publicly disclosed during a two-year period, including in documents not filed with the SEC

---

[7]    First Manhattan and Manning do not specifically allege that the statements in Perrigo's 10-Qs are among the statements that form the basis for their Section 18 claims. Rather, their Section 18 claims state that they relied upon "the statements made by Defendants in Perrigo's SEC filings." FMC ¶¶ 463; MNC ¶¶ 437. The 10-Qs are the only documents (other than the 8/13/15 10-K and the 2/25/16 10-KT) cited in the *First Manhattan* and *Manning* complaints in connection with the price-fixing allegations and that were filed by Perrigo with the SEC pursuant to the Exchange Act. FMC ¶¶ 365-67; MNC ¶¶ 345-47. To the extent that any of the Section 18 claims are premised on the 10-Qs – all of which were filed after Mr. Papa left Perrigo on April 24, 2016 – those claims against Mr. Papa should be dismissed for the additional reason that he was not a "maker" of any post-April 24, 2016 statements. *See Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142-43 (2011). Moreover, stock transactions that occurred prior to August 13, 2015, *see* FMC (ECF 9-1), Appendix A, at 1, when Perrigo filed its 8/13/15 10-K, obviously could not have been made in reliance upon the 8/13/15 10-K or the subsequently-filed 2/25/16 10-KT and 10-Qs. *See Gannon v. Continental Ins. Co.*, 920 F. Supp. 566, 578 (D.N.J. 1996) (Debevoise, J.) (dismissing 10b-5 claim because "[i]t is well established that a plaintiff cannot rely on statements made subsequent to his purchase in order to state a securities fraud claim").

pursuant to the Exchange Act, do not satisfy Section 18's strict requirements.  *See LLDVF*, 2010 WL 3210613, at *11 (dismissing section 18 claims because, although "the voluminous Amended Complaint highlight[ed] numerous statements made in SEC filings as well as statements by [the company's] management, all of which it generally alleges were false or misleading," the plaintiff did not adequately plead in a non-conclusory manner "which statements form the basis for each claim against each defendant" or "that it actually relied on those specific statements"); *Armstrong*, 678 F. Supp. 2d at 870 (dismissing section 18 claims for failure to adequately plead actual reliance where the complaint "identif[ied] misrepresentations in documents filed with the SEC under the 1934 Act" but made only "the conclusory allegation that 'the plaintiffs relied on the misrepresentations contained [in APL's SEC filings]" because "[s]uch cursory pleading is insufficient").

To adequately plead reliance for a Section 18 claim, a plaintiff must plead "*facts probative of their actual reliance.*" *In re Suprema* 438 F.3d at 284; *see also Witriol v. Conexant Sys., Inc.*, 2006 WL 3511155, at *7 (D.N.J. Dec. 4, 2006) (Chesler, J.) (same).  For that reason, courts routinely reject allegations of reliance that are "conclusory" and that lack "supporting factual matter indicating how plaintiffs relied on the alleged misrepresentations." *Int'l Fund Mgmt. S.A. v. Citigroup Inc.*, 822 F. Supp. 2d 368, 386 (S.D.N.Y. 2011); *see also Kelley v. Rambus, Inc.*, 2008 WL 5170598, at *14-15 (N.D. Cal. Dec. 9, 2008) ("Conclusory assertions of reliance are insufficient, and plaintiffs must plead facts probative of their actual reliance on any specific false statement in the filings at issue," such as "when they read any of these documents"), *aff'd*, 384 F. App'x 570 (9th Cir. 2010); *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 445 (S.D.N.Y. 2014) ("While Plaintiffs attempt to characterize the cases cited by [defendant] . . . as solely requiring plaintiffs

to specifically identify the statements on which they relied, . . . more is required, such as

allegations of *how* plaintiffs relied.") (emphasis in original).

Applying these established requirements to Plaintiffs' generalized allegations here, the

Section 18 claim fails to state a claim and must be dismissed. *See Witriol*, 2006 WL 3511155, at

*7 (granting motion to dismiss because "the allegations of reliance [were] cursory and general,

lacking the specificity that the Third Circuit requires to state a [Section 18] claim").

## II.    PLAINTIFFS FAIL TO ADEQUATELY PLEAD SECTION 10(b), 14(e), OR 20(a) CLAIMS BASED ON THEIR THEORY THAT DEFENDANTS FAILED TO DISCLOSE INCREASED COMPETITION

To state a claim under Section 10(b) of the Exchange Act and Rule 10b-5, a plaintiff

must allege "(1) a material misrepresentation or omission, (2) scienter, (3) a connection between

the misrepresentation or omission and the purchase or sale of a security, (4) reliance upon the

misrepresentation or omission, (5) economic loss, and (6) loss causation." *Roofer's*, 2018 WL

3601229, at *6. "The elements of a Section 14(e) claim are the same as a 10b-5 claim, the only

difference being that Section 14(e) arises in connection with a tender offer, while rule 10b-5

arises in connection with a purchase or sale of a security." *Id.* at *7. "Section 20(a) is a

derivative cause of action, predicated upon § 10(b) liability . . . ." *Id.* As such, "[t]he analysis of

the Section 10(b) claims is a threshold determination for analyzing whether the remaining

Exchange Act claims will proceed." *Id.* at 6.

### A.    Defendants' Public Statements Are Inactionable

#### 1.    Plaintiffs' Own Pleadings and Perrigo's SEC Filings Show that Perrigo Did Not Conceal Any Risks from Increased Competition

Plaintiffs allege that, between April 2015 and April 2016, Defendants misrepresented that

"the prices for Perrigo's prescription drugs in the U.S., including generics, were sustainable"

when they supposedly actually "knew or recklessly disregarded the fact that the pricing levels for

Perrigo's generic drug products were unsustainable."  CGC ¶ 117; FMC ¶ 123; MNC ¶ 124;

NWC ¶ 147.  According to Plaintiffs, because the FDA had "accelerated its approvals of new

generics to historic levels" in early 2015, there was "a tsunami of new competitors" to Perrigo's

products, thereby "resulting in significant downward pricing and never-before-seen levels of

newly approved generic drugs."  CGC ¶ 26; FMC ¶ 26; MNC ¶ 26; NWC ¶ 26.  Plaintiffs

contend that Perrigo supposedly knew it was not immune to these "pricing pressures," despite

allegedly "having assured investors otherwise."  CGC ¶ 28; FMC ¶ 28; MNC ¶ 28; NWC ¶ 28.

In other words, Plaintiffs allege that Defendants misrepresented that Perrigo's generic drug

prices were unaffected by competition.

      Yet during the time period at issue, Perrigo repeatedly disclosed that its generic drug

prices *were* affected by increased competition.  Indeed, as conceded by First Manhattan's,

Manning's, and Nationwide's complaints, Perrigo told investors that its generic prescription drug

division "operate[d] in a highly competitive environment" and "face[d] vigorous competition

from other pharmaceutical companies that may threaten the commercial acceptance and pricing

of our products" and that "[t]he market for Rx pharmaceuticals is subject to intense competition

from other generic drug manufacturers."  FMC ¶¶ 347, 359 (citing 8/13/15 10-K and 2/25/16 10-

KT); MNC ¶¶ 329, 339; NWC ¶¶ 330, 340.  The Company also made clear that its generic

prescription drug division "may experience increased price competition as other generic

companies produce the same product or introduce new drugs and/or drug delivery techniques

that make our current products less desirable."  8/13/15 10-K at 28-29; *see also* 2/25/16 10-KT at

29 (similar); 1/5/16 Conf. Tr. at 10 (acknowledging that there will be "more price competition"

because "there are some people coming in" to the generic segment); 6/2/15 Conf. Tr. at 5

("[W]e're recognizing that there is going to be some products in Rx that I'm going to have to

decrease for competitive reasons as well as increase some.").

Thus, Plaintiffs' allegations are flatly contradicted by what Defendants actually told the market about increased competition. *See SRM Global Fund Ltd. P'Ship v. Countrywide Fin. Corp.*, 2010 WL 2473595, at *28 (S.D.N.Y. June 17, 2010) ("[T]here can be no omission where the allegedly omitted facts are disclosed."), *aff'd*, 448 F. App'x 116 (2d Cir. 2011).

2. Plaintiffs' Theory that Defendants Concealed Increased Competition Contradicts the Theory Adopted from *Roofer's* that Defendants Concealed Decreased Competition

Plaintiffs' theory that Defendants concealed risks from increased competition is also contrary to the theory advanced in *Roofer's* and adopted in the *First Manhattan*, *Manning*, and *Nationwide* complaints.  In *Roofer's*, the Court sustained claims premised on the theory that statements about the competitiveness of the market were misleading insofar as the market allegedly was not competitive because of alleged collusion.  2018 WL 3601229, at *12. Plaintiffs' new theory here – that Defendants allegedly misrepresented that Perrigo's generic drug prices would not be affected by increased competition – contradicts the theory sustained in *Roofer's* and adopted by First Manhattan, Manning, and Nationwide.

Plaintiffs' conflicting theories cannot both be correct.  Because the parties have agreed to treat as applicable here the Court's prior ruling sustaining the theory that Defendants concealed decreased competition, the Court should dismiss claims premised on Plaintiffs' contradictory theory that Defendants concealed increased competition. *See In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001) ("[A] court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent…."); *Fabricatore v. ADT LLC*, 2018 WL 3696581, at *6 (D.N.J. Aug. 3, 2018) (Arpert, Mag.) (court "need not accept allegations that are internally inconsistent …").

15

3.     Plaintiffs Fail to Plead any False or Misleading Statement or
Omission in Connection with Ms. Brown's October 22, 2015 Statement

According to Plaintiffs, Ms. Brown falsely claimed that Perrigo's revenues were

insulated from pricing pressures in the generic prescription drug industry when, during Perrigo's

3Q 2015 earnings call, she stated that "I think it's critically important to remind you again that

nearly all of our revenues are insulated from the current pricing drama you see playing out in the

pharmaceutical industry today." 10/22/15 Conf. Call Tr. at 3; *see* CGC ¶¶ 25, 117, 157, 277;

FMC ¶¶ 25, 123, 218, 352; MNC ¶¶ 25, 124, 218, 332; NWC ¶¶ 25, 147, 224, 333.

Plaintiffs assert – without any explanation why – that, by "current pricing drama," Ms.

Brown meant "significant downward pricing" in response to the "tsunami of new competitors

and approved products in the generic drug markets" following the FDA's acceleration of

approvals of ANDAs.  CGC ¶ 26; FMC ¶ 26; MNC ¶ 26; NWC ¶ 26.  But days before the 3Q

2015 earnings call, both Hillary Clinton and Bernie Sanders called attention to the decision of

Martin Shkreli, then CEO of Turing Pharmaceuticals, to "dramatically increase[] the price of the

rare drug Daraprim, largely used by AIDS patients, from $13.50 to over $750." *See* 10/19/15

Time Magazine article.  It is far more plausible that this decision – which provoked widespread

public outrage – was the "current pricing drama" referenced by Ms. Brown.

Indeed, Plaintiffs acknowledge that only two months before Ms. Brown's October 2015

statement, Perrigo told investors that it faced "increased price competition as other generic

companies produce the same product or introduce new drugs and/or drug delivery techniques

that make our current products less desirable." 8/13/15 10-K at 28-29.  (Plaintiffs remarkably

claim that this statement, too, was false.)  Plaintiffs do not attempt to explain why the Court

should assume that, when Ms. Brown said Perrigo's revenues were "insulated from the current

pricing drama," she contradicted SEC filings that she signed only two months earlier

acknowledging the risk of "increased price competition."  Likewise, Plaintiffs allege that,

months after Ms. Brown's October 22 statement, she falsely stated that "pricing wise," the

Company "*did* see some pressure."  FMC ¶ 357; MNC ¶ 337; NWC ¶ 338.  Plaintiffs never

attempt to explain how they can claim that Defendants concealed that "pricing levels for

Perrigo's U.S. generic drugs were unsustainable as a result of increased market competition" at

the same time that Defendants were allegedly "engaged in price collusion with its generic drug

competitors."  FMC ¶ 338; MNC ¶ 322; NWC ¶ 323.

      In any event, Ms. Brown's statement about "the current pricing drama you see playing

out in the pharmaceutical industry today" is too vague to induce reliance by a reasonable

investor.  *See In re Aetna Sec. Litig.*, 617 F.3d 272, 284 (3d Cir. 2010) ("oblique references" to

company's pricing policy were "too vague to ascertain anything on which a reasonable investor

might rely").

          4.    <u>Forward-Looking Statements Are Protected by the PSLRA's Safe Harbors</u>

      Plaintiffs allege that statements such as Mr. Papa's statement that "Perrigo intended, as it

always had in the past, to 'keep pricing flat to up slightly'" (CGC ¶ 267; FMC ¶ 336; MNC

¶ 320; NWC ¶ 321) were misleading because they failed to mention "increased market

competition, caused in large part by accelerated approvals of generic drug applications by the

FDA."  CGC ¶ 269; FMC ¶ 338; MNC ¶ 322; NWC ¶ 323; *see also* 6/2/15 Conf. Tr. at 5

(statement by Mr. Papa concerning Perrigo's "*goal* of keeping [its] pricing flat to up slightly.").

These statements are forward-looking; they address Perrigo's pricing goals and Mr. Papa's

beliefs about what Perrigo could achieve in the future.[8]  Indeed, Plaintiffs themselves cite the

---

[8]      To the extent that Plaintiffs assert that these statements are mixed present/future
statements, the "present" portions of these statements are not actionable for failure to adequately
plead falsity.  For example, Plaintiffs allege that the following statement by Mr. Papa was false
or misleading: "I think as a general rule, what I've tried to do with pricing at Perrigo in the eight

very next sentence of Mr. Papa's April 21, 2015 statement, in which he stated that he was "very comfortable that, certainly in our current year in our calendar 2015, *as we look to the future*, we can keep pricing flat to up slightly." CGC ¶ 267; FMC ¶ 336; MNC ¶ 320; NWC ¶ 321.  As forward-looking statements, they qualify for protection under the PSLRA's safe harbors (15 U.S.C. §§ 78u-5(c)(1)(A) & (B)), which operate in the alternative – forward-looking statements are not a basis for liability if *either* safe harbor applies.  *See In re Synchronoss Sec. Litig.*, 705 F. Supp. 2d 367, 412 n.59 (D.N.J. 2010) (Brown, J.) (PSLRA "offers two *independent* avenues to the defendant seeking protection"); *Roofer's*, 2018 WL 3601229, at *15 (forward-looking revenue statements not actionable).[9]

    (a)    *The Challenged Statements Are Protected by the First Safe Harbor*

    The PSLRA's first safe harbor bars liability if an identified forward-looking statement is "accompanied by meaningful cautionary statements identifying important factors that *could* cause actual results to differ materially from those in the forward-looking statement[s]." 15 U.S.C. § 78u-5(c)(1)(A)(i).  The risks that ultimately materialized need not be identical to those

---

years, nine years, I've been a part of the company is to keep pricing flat to up slightly." CGC ¶ 270; FMC ¶ 341; MNC ¶ 323; NWC ¶ 324.  But the Complaints contain no well-pleaded allegations that that was not in fact Mr. Papa's pricing strategy, or that the pricing of Perrigo's products was not in fact flat to up slightly, during the years in question.

[9]    Plaintiffs also assert that Mr. Papa's August 5, 2015 statements that "our team has done a great job at looking at pricing," "[a]cross the portfolio we think there are still opportunities to do pricing," "we think we have a strong Rx business," and "we look to still find some additional pricing opportunities for the future" were false or misleading.  CGC ¶ 274; FMC ¶ 345; MNC ¶ 327; NWC ¶ 328; *see also* FMC ¶ 357 (challenging Mr. Papa's statements that the launch of a new product would "giv[e] us great strength in our Rx category" and "we believe[] that will give us a very high gross margin and operating margin, certainly as we think about 2016 and beyond"); MNC ¶ 337 (same); NWC ¶ 338 (same).  However, not only are many of these forward-looking statements, these "statements of optimism . . . commonly heard from corporate managers" are non-actionable puffery insofar as they are "not determinate, verifiable statements" but rather "the types of vague statements upon which reasonable investors do not rely."  *In re Hertz Global Holdings, Inc. Sec. Litig.*, 2017 WL 1536223, at *11 (D.N.J. Apr. 27, 2017) (Arleo, J.), *aff'd*, 905 F.3d 106 (3d Cir. 2018); *see also Roofer's*, 2018 WL 3601229, at *14 (descriptions of management team as "exceptional" and "best-in-class" were inactionable puffery).

identified by the company's warnings; no liability attaches even if "the particular factor that

ultimately cause[d] the forward-looking statement not to come true" was not disclosed.

*Karacand v. Edwards*, 53 F. Supp. 2d 1236, 1243 (D. Utah 1999); *see also Roofer's*, 2018 WL

3601229, at *15.

Here, as noted above (*supra* Sec. II.A.1), Perrigo warned investors that the "pricing of

[its] products" might be threatened by "vigorous competition from other pharmaceutical

companies," including, specifically, that its generic prescription drug division "may experience

increased price competition as other generic companies produce the same product or introduce

new drugs and/or drug delivery techniques that make our current products less desirable."

8/13/15 10-K at 28-29. Moreover, Perrigo likewise warned that its "current and future

competitors may develop products comparable or superior to those offered by [Perrigo] at more

competitive prices" and that if it was "unable to compete successfully, [its] business [would] be

harmed through loss of customers or increased negative pricing pressure that would adversely

affect [its] ability to generate revenue and adversely affect [its] operating results." 8/13/15 10-K

at 29. For these reasons, the PSLRA's first safe harbor shields Defendants from liability in

connection with all of these forward-looking statements.[10]

> **(b)**   *The Challenged Statements Are Protected by the*
> *Second Safe Harbor*

The PSLRA's second safe harbor provides that, even if a company did not identify risk

factors, forward-looking statements are not actionable unless the complaint pleads specific facts

---

[10]    The "bespeaks caution" doctrine also protects the forward-looking statements, which are
"immaterial as a matter of law" insofar as they are accompanied by meaningful cautionary
language. *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, 2015 WL 3833849, at *15, 31
(M.D. Pa. June 22, 2015) ("Forward-looking statements not specifically identified as such and
therefore protected by the PSLRA[] . . . may nevertheless be protected under the 'bespeaks
caution' doctrine"); *see also In re Splash Tech. Holdings, Inc. Sec. Litig.*, 2000 WL 1727377, at
*9 (N.D. Cal. Sept. 29, 2000) (bespeaks caution doctrine can protect oral forward-looking
statements where cautionary language appears in 10-K and 10-Q).

concerning the defendants' "actual knowledge" that the statement was false.  15 U.S.C. § 78u-5(c)(1)(B); *Key Equity Inv'rs, Inc. v. Sel-Leb Mktg. Inc.*, 2005 WL 3263865, at *7 (D.N.J. Nov. 30, 2005) (Cavanaugh, J.), *aff'd*, 246 F. App'x 780 (3d Cir. 2007).  "Actual knowledge" must be pled with particularity "with respect to each act or omission" at issue.  15 U.S.C. § 78u-4(b)(2)(A).  A showing of recklessness "is insufficient."  *Synchronoss*, 705 F. Supp. 2d at 402.

Here, Plaintiffs allege that "[a]t a minimum, the Individual Defendants were reckless in falsely stating that the Company . . . was keeping pricing 'flat to up slightly' despite [pricing] pressures."  CGC ¶ 305; FMC ¶ 416; MNC ¶ 396; NWC ¶ 367.  However, insofar as Mr. Papa's statements about Perrigo trying to keep pricing flat to up slightly were forward-looking statements, Plaintiffs must plead that Mr. Papa had actual knowledge of the falsity of those statements.  Plaintiffs fail to plead any such facts.

**B.      Defendants' Alleged Statements to First Manhattan Are Inactionable**

The *First Manhattan* complaint makes distinct allegations about communications between First Manhattan representatives and Mr. Papa and Ms. Brown, respectively, concerning the generic prescription drug business.  FMC ¶¶ 339, 349.  As described below, those statements by Mr. Papa and Ms. Brown do not provide a basis for a securities fraud claim.

1.      Mr. Papa's Alleged Statements During his April 22, 2015
        Conference Call with First Manhattan Are Inactionable

First Manhattan alleges that during Mr. Papa's April 22, 2015 conference call with its representatives, he falsely "characterized the pipeline for the generic Rx business as the Company's 'best ever,'" and stated that "'no competitors have filed on several key products.'"  FMC ¶ 339.  Characterizing a business's pipeline as its "best ever" is inactionable because it is puffery upon which no reasonable investor would rely.  *See Roofer's*, 2018 WL 3601229, at *14.

Moreover, the *First Manhattan* complaint contains no well-pleaded facts demonstrating

that either of these alleged statements was false.  First Manhattan does not allege any facts

showing that Perrigo's generic Rx business's pipeline as of April 2015 was not its "best ever" or

that there were competitors who had "filed on several key products."  FMC ¶ 339; *see*

*Carpenters Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014) (plaintiffs

"must do more than say the statements . . . were false and misleading; they must demonstrate

with specificity why and how that is so").  Moreover, the vagueness of the latter statement – Mr.

Papa is not alleged to have identified the "key products" – further undercuts any allegation that a

reasonable investor would have relied on any such statement.  *See Aetna*, 617 F.3d at 284.

> 2.      Ms. Brown's Alleged Statements During her September 30, 2015
>          Meeting with First Manhattan Are Inactionable

First Manhattan alleges that during a September 30, 2015 meeting, Ms. Brown told

representatives of First Manhattan that "the 'Generic RX business is a defensible asset' because

'there are few competitors in Perrigo's niche generic topical segments, and there is a high cost of

entry due to more stringent requirements for clinical trials."  FMC ¶ 349.  Once again, the *First*

*Manhattan* complaint does not adequately allege that these statements were false.  Even if, as

First Manhattan alleges, market competition for Perrigo's U.S. generic prescription drugs

increased after the FDA's acceleration of its approvals of ANDAs between April 2015 and

December 2015 (FMC ¶ 338), that does not suggest that Ms. Brown's alleged statements during

the September 30, 2015 meeting were false or misleading.  First Manhattan does not provide any

basis to suggest that, as of September 30, 2015, the Generic Rx business was not in fact a

"defensible asset," or that there were more than a few competitors in Perrigo's niche generic

topical segments at that time, or that there was not a high cost of entry due to more stringent

requirements for clinical trials.  *See Roofer's*, 2018 WL 3601229, at *8 ("[T]he statement must

have been misleading at the time it was made, as liability cannot be imposed on the basis of

subsequent events.").

**C.     Plaintiffs Fail to Adequately Plead Scienter**

"To adequately allege scienter, plaintiffs must plead with particularity that each defendant acted with a mental state embracing intent to deceive, manipulate, or defraud." *Roofer's*, 2018 WL 3601229, at *15. "In the Third Circuit, [s]cienter may be established by setting forth facts that constitute circumstantial evidence of either recklessness or conscious behavior and supported by evidence of motive and opportunity to commit fraud." *Id.*

Regardless of the pleading method used, "scienter allegations must be cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.*; *see also Tellabs*, 551 U.S. at 328-29 ("an inference of scienter [must be] *at least as likely* as any plausible opposing inference") (emphasis in original). "[I]n conducting the scienter analysis, courts must analyze the complaint holistically to determine whether its allegations, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *In re Hertz Global Holdings Inc.*, 905 F.3d 106, 114 (3d Cir. 2018). Under this standard, courts "must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Roofer's*, 2018 WL 3601229, at *15. "In this regard, the PSLRA alters the normal operation of inferences under Rule 12(b)(6), which requires that all reasonable inferences be construed in a light most favorable to plaintiffs." *In re Adolor Sec. Litig.*, 616 F. Supp. 2d 551, 564 (E.D. Pa. 2009).

1.     The Complaints Fail to Plead Particularized Facts Giving Rise to a Strong
       Inference that Defendants Were Motivated to Defraud Investors

Plaintiffs allege that Mr. Papa and Ms. Brown "had a palpable motive to engage in the fraudulent conduct alleged herein, namely, to fend off Mylan's Tender Offer and, by extension, to preserve their lucrative jobs at Perrigo." CGC ¶ 306; FMC ¶ 419; MNC ¶ 399; NWC ¶ 370.

The Court in *Roofer's* rejected these allegations, explaining that "[t]his type of motive does not contribute to an inference of scienter because it does not suggest any concrete and personal benefit to the individual defendants resulting from th[e] fraud." 2018 WL 3601229, at *18.  As the Court recognized, "the allegation that executives sought to avoid a hostile takeover falls woefully short of demonstrating scienter under federal securities law."  *Id.* at *18; *see also In re NovaGold Res. Inc. Sec. Litig.*, 629 F. Supp. 2d 272, 296, 297, 304 n.24 (S.D.N.Y. 2009) (rejecting the argument that the motive for the supposed fraud was "to inflate [the company]'s stock price to fend off [a] hostile takeover bid" because, although "[s]uch a motive . . . could be understood as the desire to preserve one's career and compensation," that desire is "insufficiently concrete and personal to qualify as a motive supporting the inference of scienter").

Likewise, Plaintiffs allege (CGC ¶ 306; FMC ¶ 419; MNC ¶ 399; NWC ¶ 370), as in *Roofer's*, that Mr. Papa and Ms. Brown "were awarded . . . special bonuses following the defeat of the Mylan bid," 2018 WL 3601229, at *5, but fail to plead any facts showing that Mr. Papa and Ms. Brown were aware, at the time they made the challenged statements in connection with the tender offer, that they might receive a bonus following the failure of the offer.  Moreover, "courts have uniformly held that incentive compensation alone cannot provide a sufficient basis on which to support allegations of" scienter.  *Wilson v. Bernstock*, 195 F. Supp. 2d 619, 636 (D.N.J. 2002) (Irenas, J.).  Indeed, in light of the ubiquity of performance awards as a method of compensation for executives of public companies, "if performance-based compensation were a sufficient predicate for fraud, then virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions."  *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004).

For these reasons, "[i]f anything it appears that the absence of a particularized motive

weighs *against* finding scienter." *Roofer's*, 2018 WL 3601229, at *18.

> 2.   The Complaints Fail to Plead Particularized Facts Giving Rise to a
>       <u>Strong Inference of Conscious Misbehavior or Recklessness</u>

A complaint must contain allegations of "strong circumstantial evidence of either

conscious behavior or recklessness" for the case to proceed. *Hertz*, 2017 WL 1536223, at *15.

Further, inferences of scienter "may be made only when the fact pattern *unambiguously indicates*

that the defendant was acting with the requisite state of mind." *Synchronoss*, 705 F. Supp. 2d at

399 (emphasis in original). Moreover, where, as here, the motive behind the supposed fraud "is

not apparent," the "strength of the circumstantial allegations [of fraudulent intent] must be

correspondingly greater." *Dempsey v. Vieau*, 130 F. Supp. 3d 809, 814-15 (S.D.N.Y. 2015).

"Conscious misbehavior is alleged by stating with particularity facts giving rise to a

strong inference of conscious wrongdoing, such as intentional fraud or other deliberate illegal

behavior." *Roofer's*, 2018 WL 3601229, at *18. "Recklessness" involves "not merely simple, or

even inexcusable negligence, but an *extreme departure* from the standards of ordinary care, and

which presents a danger of misleading buyers or sellers that is either known to defendant or is so

obvious that the actor must have been aware of it." *Id.* Indeed, "[a] misrepresentation must be

so recklessly made that the culpability attaching to such reckless conduct closely approaches that

which attaches to conscious deception." *Id.*

> (a)   *The Confidential Witnesses Do Not Contribute to a*
>       *Strong Inference of Scienter*

Here, Plaintiffs cite two confidential witnesses (CW-8 and CW-9) for the uncontroversial

proposition that "Perrigo, like other drug companies, kept track of what competing drug

companies were doing in the new product development area." CGC ¶ 133; FMC ¶ 139; MNC

¶ 140; NWC ¶ 163. Plaintiffs allege that John Wesolowski, a Senior Vice President of Generic

Rx, "had a running list that included not only Perrigo products coming to market, but also

24

identified the companies in competition with Perrigo to be first to market in the ANDA process"
and that "CW-8 explained that Wesolowski would give him the list identifying which competing
companies were applying for ANDA approval of competing products so that CW-8 would know
which companies Perrigo had to beat in the ANDA process." *Id.* Plaintiffs assert that
"[a]ccording to CW-8, Wesolowski's group also knew which products other drug companies
were bringing to market to compete with existing Perrigo products," that "CW-8 heard
individuals in Wesolowski's group discuss keeping track of such information," and that "CW-8
explained that Wesolowski's group needed this information so it could plan sales and pricing."
CGC ¶ 134; FMC ¶ 140; MNC ¶ 141; NWC ¶ 164.

These allegations are not sufficient to plead scienter for several reasons. *First*, the
unnamed witnesses do not contradict Defendants' statements. Defendants never claimed that
Perrigo did not keep track of what competing drug companies were doing, nor did they claim
that Perrigo did not seek to identify which competing companies were applying for ANDA
approval of competing products. CW-8's statement that "Wesolowski's group needed this
information so it could plan sales and pricing" is entirely consistent with the Company's
disclosure that the pricing of its products might be threatened by "vigorous competition from
other pharmaceutical companies." *See supra* Sec. II.A.1 (quoting 8/13/15 10-K at 28-29).

*Second*, even if the statements of these unnamed witnesses contradicted Defendants'
statements (they do not), the alleged statements from these witnesses do nothing to support any
inference (much less the requisite strong inference) that Mr. Papa or Ms. Brown acted with
scienter insofar as these individuals were "several levels down the reporting structure" from Mr.
Papa and Ms. Brown. *In re Tibco Software, Inc. Sec. Litig.*, 2006 WL 2844421, at *2 (N.D. Cal.
Sept. 29, 2006); *see also Roofer's*, 2018 WL 3601229, at *15 ("To adequately allege scienter,

plaintiffs must plead with particularity that *each defendant* acted with "a mental state embracing

intent to deceive, manipulate, or defraud."). CW-8 allegedly "was a Scientific Advisor for

Medical Affairs" who "reported to Tony Fargasso, who in turn reported to Chief Medical

Officer[] Grainne Quinn." CGC ¶ 56; FMC ¶ 61; MNC ¶ 61; NWC ¶ 85.  As for CW-9,

Plaintiffs allege that he or she "was a Vice President in Perrigo's Sales and Marketing unit" who

"reported to Stephanie Gamble, the Director of Marketing, who in turn reported to Tom Cotter,

the Vice President of OTC Marketing." CGC ¶ 57; FMC ¶ 62; MNC ¶ 62; NWC ¶ 86.

Plaintiffs do not claim that these individuals reported to Mr. Papa or Ms. Brown, that

there was any contact between them and Mr. Papa or Ms. Brown, that the information to which

they were privy was communicated to Mr. Papa or Ms. Brown, or that they "would have been in

a position to know what Defendants knew during the relevant time period." *Alaska Elec.*

*Pension Fund v. Adecco S.A.*, 434 F. Supp. 2d 815, 835 (S.D. Cal. 2006), *aff'd*, 256 F. App'x 74

(9th Cir. 2007); *see also In re Bio-Tech. Gen. Corp. Sec. Litig.*, 380 F. Supp. 2d 574, 596 (D.N.J.

2005) (Ackerman, J.) ("Mere allegations of knowledge on the part of subordinates do not provide

a sufficient basis for imputing knowledge to executives."), *aff'd sub nom.*, *In re Savient Pharm.*

*Inc. Sec. Litig.*, 283 F. App'x 887 (3d Cir. 2008).

The allegations based on statements by another unnamed witness, CW-6, fail for the

same reason.  According to the Complaints, CW-6 was a Senior Business Analyst who "reported

to the Israel-based Director of SAP Applications." CGC ¶ 54; FMC ¶ 59; MNC ¶ 59; NWC ¶

83.  Plaintiffs allege that the group that CW-6 was responsible for growing (but not CW-6

specifically) reported to Perrigo's Chief Information Officer, who in turn reported to "senior

management." *Id.*  Plaintiffs also assert that CW-6 "worked on the same floor" as Tom Wight, a

Business Process Architect for Rx and OTC at Perrigo.  CGC ¶ 135; FMC ¶ 141; MNC ¶ 142;

NWC ¶ 165.  But the Complaints do not suggest that there was even an attenuated connection between CW-6 and Mr. Papa or Ms. Brown, nor do they allege that the information supposedly conveyed by Mr. Wight to CW-6 (CGC ¶ 135; FMC ¶ 141; MNC ¶ 142; NWC ¶ 165) was shared with Mr. Papa or Ms. Brown.  *In re Bio-Tech.*, 380 F. Supp. 2d at 596.

 ***Third***, Plaintiffs fail to allege that any of these individuals had positions at Perrigo that would have given them firsthand knowledge about the sustainability of prices for Perrigo's generic prescription drugs.  *See Nat'l Junior Baseball League v. PharmaNet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 540 (D.N.J. 2010) (Wolfson, J.) (rejecting, as "speculative and conclusory[,]" reports from witnesses who lacked firsthand information).  CW-6, a senior business analyst, was not responsible for pricing; he or she was responsible for "growing the E-Commerce Group and working to get the E-Commerce platform integrated in to the SAP system."  CGC ¶ 54; FMC ¶ 59; MNC ¶ 59; NWC ¶ 83.  CW-8, a scientific advisor for medical affairs, "answered drug-related questions" (not pricing-related questions) for the generic pricing team.  CGC ¶ 56; FMC ¶ 61; MNC ¶ 61; NWC ¶ 85.  Plaintiffs' barebones description of CW-9's job (CGC ¶ 57; FMC ¶ 62; MNC ¶ 62; NWC ¶ 86) likewise does not suggest that he or she had firsthand knowledge about the sustainability of prices for Perrigo's generic prescription drugs.  *See City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*, 686 F. Supp. 2d 404, 422 (D. Del. 2009) ("[I]t is unclear how CW 1's position as a 'member of Horizon's Fleet Administration department from 2001 to 2003' would make him or her privy to Horizon's rate-setting procedures.  When, as here, the allegations of a confidential witness lack sufficient indicia of reliability, we must discount them steeply.").

 Indeed, CW-6 does not claim that he or she learned information about the supposed "pricing pressure in the Rx segment in 2015" through his job responsibilities, but rather through

conversations with a colleague "who worked on the same floor." CGC ¶ 135; FMC ¶ 141; MNC ¶ 142; NWC ¶ 165. Water-cooler gossip of that type cannot support a securities claim. *See Zucco Partners, LLC v. Digimarc Corp.*, 445 F. Supp. 2d 1201, 1205-06 (D. Or. 2006) ("[T]hese allegations are based on hearsay rather than personal knowledge and, therefore, are not probative."), *aff'd*, 552 F.3d 981 (9th Cir. 2009); *In re Fusion-io, Inc. Sec. Litig.*, 2015 WL 661869, at *18 (N.D. Cal. Feb. 12, 2015) (according "little weight" to confidential witness's account that a senior vice president supposedly said that the company would miss its projected revenues because of reliance on hearsay).

> (b)   *The Supposed "Additional Allegations of Scienter"*
> *Do Not Contribute to a Strong Inference of Scienter*

Plaintiffs also attempt to plead scienter based on Mr. Papa's certifications pursuant to Rule 19.2 of the Irish Takeover Rules and Mr. Papa's and Ms. Brown's certifications pursuant to the Sarbanes-Oxley Act of 2002. CGC ¶¶ 310, 313; FMC ¶¶ 423, 426; MNC ¶¶ 403, 406; NWC ¶ 374. In *Roofer's*, the Court held that "[s]uch certifications do not in themselves give rise to an inference of recklessness absent accompanying circumstantial evidence of conscious or reckless behavior" and declined to "consider arguments related to these certifications unless there are accompanying circumstantial allegations giving rise to a cogent and compelling inference of scienter." 2018 WL 3601229, at *16. There are no such circumstantial allegations here.

Plaintiffs also allege that Doug Boothe, Perrigo's Executive Vice President and General Manager of the generic prescription drug division, left Perrigo in July 2016, "only three months after Papa's resignation." CGC ¶ 317; FMC ¶ 430; MNC ¶ 410; NWC ¶ 378. In *Roofer's*, the Court found "little if any probative value" in the "bare fact" of Mr. Boothe's departure, 2018 WL 3601229, at *16, and that analysis applies equally here.

Nor can scienter be inferred based on the allegation that "Perrigo's production of generic drugs through the Company's Rx segment was . . . a core operation of the Company during the Relevant Period." CGC ¶ 304; FMC ¶ 415; MNC ¶ 395; NWC ¶ 366. Courts are "hesitant to impute knowledge to a defendant pursuant to the core business doctrine absent particularized allegations showing that defendants had ample reason to know of the falsity of their statements." *Martin v. GNC Holdings, Inc.*, 2017 WL 3974002, at *14 (W.D. Pa. Sept. 8, 2017); *see also Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 247 (3d Cir. 2013) (requiring plaintiffs to plead "specific information conveyed to management and related to fraud"). Here, Plaintiffs point to no specific information conveyed to Mr. Papa or Ms. Brown and related to fraud.

Finally, Plaintiffs fail to adequately plead scienter based on allegations that "Papa and Brown claimed to have personal knowledge of Perrigo's pricing strategy in the Rx segment and the Company's ability to withstand pricing pressures in the generic drug industry" and "had access to information concerning, among other things, the increased competition in the U.S. generic drug market and the FDA's ramped-up approval of generic drug applications." CGC ¶¶ 305, 307; *see also* FMC ¶¶ 416, 420 (similar); MNC ¶¶ 396, 400 (similar); NWC ¶¶ 367, 371 (similar). *First*, insofar as those statements were not false or misleading (*see supra* Sec. II.A.), they do not suggest that the speakers intended to defraud. *Second*, those statements do not suggest that Mr. Papa and Ms. Brown possessed "specific information … related to fraud." *Rahman*, 736 F.3d at 247. *Third*, the Court must consider the entirety of each Complaint in determining whether it pleads a strong inference of scienter. As described below, none of the new allegations in the Complaints survives that collective analysis.

(c)     *Collectively, the Allegations Do Not
Raise a Strong Inference of Scienter*

In *Roofer's*, the Court held that the allegations concerning purported price-fixing of six

29

generic prescription drugs only "narrowly surpassed the bar for pleading scienter," even though the individual defendants "repeated[ly] answer[ed] . . . analysts' questions regarding pricing pressure and policy in the generic division." 2018 WL 3601229, at *22. The Court contrasted the price-fixing allegations with the organic growth allegations, about which the plaintiffs likewise had argued "that Defendants repeatedly spoke about the subject and implied firsthand knowledge." *Id.* The Court held that "even if the [Defendants'] answers" to questions about organic growth "did indicate some level of knowledge," still, "the collective scienter allegations are weaker than the scienter allegations related to the price-fixing scheme" because, with regard to the price-fixing allegations, the plaintiffs "noted a parallel investigation and sizeable revenue derived from the fraudulent scheme." *Id.*

Here, there is no allegation that there has been any government investigation concerning when, whether, or how Perrigo evaluated the FDA's acceleration of its approvals of ANDAs between April 2015 and December 2015. Nor do Plaintiffs plead how much revenue was derived from the alleged scheme to mislead investors about the effect of the FDA's approvals on Perrigo's pricing. As such, the scienter allegations discussed above, taken collectively, are more like the organic growth allegations that the Court dismissed in *Roofer's* than like the price-fixing allegations that narrowly surpassed the bar for pleading scienter.

## CONCLUSION

For these reasons, the relief sought by Defendants should be granted.

Dated: November 20, 2018   By: */s/ Alan S. Naar*
               Alan S. Naar

          GREENBAUM, ROWE, SMITH
          & DAVIS LLP
          Alan S. Naar
          99 Wood Avenue South
          Iselin, New Jersey 08830

(732) 476-2530
anaar@greenbaumlaw.com

FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP
James D. Wareham (*pro hac vice*)
James E. Anklam (*pro hac vice*)
801 17th Street, NW
Washington, DC 20006
(202) 639-7000
james.wareham@friedfrank.com
james.anklam@friedfrank.com

Samuel P. Groner (*pro hac vice*)
One New York Plaza
New York, New York 10004
(212) 859-8000
samuel.groner@friedfrank.com

*Attorneys for Defendant Perrigo Company plc*

Dated:  November 20, 2018               By: */s/ Marshall R. King*
                                             Marshall R. King

GIBSON, DUNN & CRUTCHER LLP
Reed Brodsky (*pro hac vice*)
Aric H. Wu (*pro hac vice*)
Marshall R. King
200 Park Ave
New York, New York 10166
(212) 351-4000
rbrodsky@gibsondunn.com
awu@gibsondunn.com
mking@gibsondunn.com

*Attorneys for Defendant Joseph Papa*

Dated:  November 20, 2018               By: */s/ Brian T. Frawley*
                                             Brian T. Frawley

SULLIVAN & CROMWELL LLP
John L. Hardiman (*pro hac vice pending*)
Brian T. Frawley
Michael P. Devlin (*pro hac vice pending*)

31

125 Broad Street
New York, New York 10004
(202) 558-4000
hardimanj@sullcrom.com
frawleyb@sullcrom.com
devlinm@sullcrom.com

*Attorneys for Defendant Judy Brown*

32